Good morning and may it please the court. My name is Meredith Esser and I'll be arguing this case on behalf of Aaron Bowen. There's been a lot of briefing in this case but I think it's been narrowed down to one single central question and that is whether the federal crime of witness retaliation is categorically a crime of violence under the Force Clause of 924C. The statute at issue entails engaging in conduct that either causes bodily injury against a person or damages the property of another person with a retaliatory intent. Do we go to the categorical approach before we go to error? Don't you first have to determine if there was error here? Yes, Your Honor, and I believe that there was error here because the district court would have only been able to rely on the residual clause at the original sentencing. What evidence do we have of that? Well, I believe Your Honor is getting to a Snyder type of question of whether there was Johnson error at the original sentencing. And I think that the conclusion that is required here is yes, because at the time of the original sentencing, this court's precedent, Perez-Vargas, would have foreclosed any other option for the court other than the residual clause. And so once we have determined that there was Johnson error at the original sentencing, then we go to the question of... Wait a minute. Perez-Vargas said you could have bodily injury without contact, right? Correct. So Perez-Vargas was the law of the land at the time that Mr. Bowen was sentenced, which was in 2007. I believe Perez-Vargas was a 2005 case. Obviously, Perez-Vargas has now been overturned by Ontiveros. But first we look at what would happen then, right? Correct. I would point out that the government hasn't actually argued the Snyder analysis, and I believe that's because the government has conceded that under McQuiggan, if the defendant is – if this crime of violence is not actually a crime of violence under today's law, he would be actually innocent of the 924C count. But what does that – I mean, that – I was sort of relieved to see that concession, but then I don't know, you know, we have to figure out what the law is. I appreciate concessions. But if that were the case, there would be no point of having a statute of limitations. You just cut right to the chase. Instead of looking at these cases in sequence, as I think we have to under Driscoll and Snyder, we would look at them from the back end, right? That's what actual innocence would tell us. And I think the distinction here is that Driscoll and Snyder were both Armed Career Criminal Act cases in which we were discussing a sentencing enhancement. And here, 924C is a standalone conviction, and so the actual innocence exception operates differently in the 924C context from the Armed Career Criminal Act context because there's lots of precedent that says if you're dealing with a sentencing enhancement, you can't be actually innocent of a sentencing enhancement, whereas you can be actually innocent of an actual conviction, and 924C is a separate conviction. And that's why Snyder and Driscoll don't answer the question in this case and why the actual innocence exception does attach in this case if the crime of violence is not actually categorically a crime of violence. And what do we have for authority on that? Do we go with McQuiggan? McQuiggan. Okay. McQuiggan was related to new facts, right? Right. McQuiggan. And the case talks about how narrow the actual innocence exception is. If it's interpreted the way the government has conceded here, it really does eliminate the statute of limitations in a very large group of cases that wouldn't make it rare at all. Sure. I mean, I think I just go back to the idea that this is a separate conviction, and so if he's actually innocent of the 924C conviction, I think that a lot of the procedural defenses would fall away. That said, I still believe that. So on a 924C, it doesn't matter how long you wait. There's no limitation. That's the position that we're taking, and I think that's the position that the government is taking. But that said, I think that on a timeliness issue, even if McQuiggan weren't the controlling precedent here, I do believe that the claim after DeMaia, I think it would be very difficult to say that this claim is not timely, because the Supreme Court has interpreted the scope of the Johnson right to encompass the very language that's in the 924C statute. Well, the Supreme Court has never applied a categorical approach to 924C, has it? I mean, I think that the Salas case, which is controlling here, has. I'm asking you about the Supreme Court. No, but I think that. And you just described how 924C is different from the ACCA, which is an enhancement. 924C is very different because you're not looking at a past crime. You're actually convicting someone of that crime right now. In some ways, categorical approach doesn't really make any sense under 924C, does it? Well, I mean, I think under Salas, you know, this Court has said that you do apply the categorical approach. Well, no one argued in Salas about the application of the categorical approach. My understanding of Salas is that the categorical approach has to apply to the question of whether the 924C predicate is a crime of violence. And I think, again, when we look at the way that the Supreme Court interpreted this language in DiMaia and used Johnson to extend that ruling to DiMaia, I think that the timeliness issue is much stronger for Mr. Bowen now after DiMaia than it was previously. Does it matter that DiMaia was on direct appeal? Not if you're talking about the actual innocence exception, because the actual innocence I'm talking about when you're applying a rule from one case to another case on direct appeal. Is it different than collateral review by an inferior court? DiMaia defined the scope of the right that we're talking about in this case, and I think that that's the question about whether Johnson should be applied or whether – basically, we're talking about whether Mr. Bowen has a Johnson claim. And I don't think it matters how DiMaia was percolated up to the Supreme Court. I think what matters is that DiMaia extended the scope of the Johnson claim to a new context, which encompasses the very same language that Mr. Bowen is challenging here. And why was Beckles decided differently? Beckles was decided differently because it was a guidelines issue, and I don't think that the discretionary guidelines have the same sort of Sixth Amendment type of concerns that attach in ACCA cases and 924C cases. In other words, I think that the central holding in Beckles – or one of the central points in Beckles was that there's a lot of discretion at sentencing. It's a non-mandatory sentencing scheme versus the Armed Career Criminal Act and 924C, which have a mandatory sentencing scheme in which case the vagueness issues at play in the Sixth Amendment issues at play are much more significant and much stronger. Well, DiMaia didn't have anything to do with this particular statute. Well, it's the identical language. Well, but so – it was the identical language in Johnson, too. And it didn't apply until DiMaia came along. So why should – why should this – why should DiMaia control beyond 16b? You know, the – The Supreme Court doesn't control. The Supreme Court's never ruled on it. And you're untimely. Well, this Court has said that the residual clause of 924C is vague. And, you know, the identical language was considered in DiMaia. I would like to turn to the predicate, if I may, just for a few minutes. So the predicate at issue here is the federal claim of witness retaliation. And the reason why I want to sort of focus on it is because there's not a lot of law on the issue. So the statute require – or entails causing bodily injury to another person or damaging the property of another person. And this Court employs a two-step process for determining whether a prior conviction is a crime of violence. First, this Court asks what the minimum force required by the statute is. And, second, whether that minimum force categorically fits within the definition of crime of violence. And in the briefs, we cited a case from the Sixth Circuit, which is United States v. Edwards, in which this same statute was applied to a situation that involved threatening to spray paint a person's car. And so the question is whether this least of the acts, this spray painting a person's car, entails force that would be a crime of violence under this Court and the Supreme Court's precedent. But, again, you're applying a Mathis approach before we've determined whether there's error initially. You've moved on to harmlessness. Yes. Can we do that? Because if you stop at error, how do you win there? Because you have, I think, in this record, you have evidence of injury to person most definitely. Sure. So there would be a basis for an element conviction, support for an element. I think that, so the jury was instructed that this crime, if it met the element, that it would be a crime of violence. And I think from there, you have to take a categorical approach to whether that prior conviction was a crime of violence. And that instruction, I think, was instructional, sort of, I don't want to say instructional error, because it was, you know, under the law at the time, that crime was not a crime of violence because we had Perez Vargas. And so, or it was a crime of violence under the residual clause only because there was Perez Vargas. Why isn't it a crime of violence under 924CA, C3A? Which one is C3A? Force. The force clause, under today's law. No. We don't. The initial review. The initial question of what, we have to go back to the law at the time of sentencing under Snyder. To decide whether it's more likely than not that the sentencing court relied on the residual clause. And that means you've got to convince us that it's not more likely than not that they relied on the force clause, 924C3A. And I think that the answer to that is under Perez Vargas at the time, it would only have been a crime of violence under the residual clause. And can you explain that? Because Perez Vargas said that if the language of causation of bodily injury, at the time, at that time, not anymore, obviously. But at that time, causation of bodily injury didn't entail necessarily violent force. Because this court's precedent said you could cause bodily injury by using de minimis force, by indirect force, by all the kinds of hypotheticals that, you know. That were set out in Perez Vargas. Correct. Pretty creative. And so at the time, Perez Vargas would have shown that the residual clause was the operative clause for this particular case. I would like to reserve two minutes for rebuttal. Thank you. Thank you. May it please the court, Bishop Grewell, on behalf of the United States. I was going to turn to the property question as well, but sort of to address why we went ahead and conceded on McQuiggan, since the court had some questions about that. I think where F3 is still going to have a lot of viability is, first of all, the sentencing that's already been mentioned. But when you take it out of the context of Johnson in particular, which sort of said certain things are not going to be illegal, certain conduct is not going to be illegal under that statute, you look at F3 more broadly. If a Supreme Court decision comes down and says an element of a certain offense is no longer an element, then you're still going to look, well, does the person satisfy that element or not? There's not going to be an actual innocence in that situation. Or if you have Elaine Apprendi and you have procedural considerations like that, that's not going to have actual innocence. So I think there are a lot of things that F3 is going to cover, even where actual innocence looks to facts or looks to the fact that the Supreme Court has said that certain facts are no longer illegal. That's the reason we made the concession there. I happen to be on another case. Morgan, you seem to have taken inconsistent positions in the two cases. I believe I'm aware of where we are in Morgan, and I think our stance in Morgan is that we're still basically preserving the arguments, given that Salas is still potentially pending before the Supreme Court. And that's what you said in your supplemental authority in this case. Yes, yes. And so we believe that if the court were to – I'm not going to concede for the attorney in Morgan, but my understanding would be that our position would be if the court were to decide Morgan that day, that the person would in fact probably be actually innocent and you would have to decide for them. But we would obviously ask the court to sort of wait until the Supreme Court makes its final decision there. Given that the Second Circuit in Barrett has now adopted the government's conduct approach and there is a circuit split, I think it's pretty likely that the Supreme Court is going to address this question in the next term. Unless there are further questions on that, I guess I would turn to whether or not the damaging property element of the Federal Witness Retaliation Statute necessarily requires the use of physical force as contemplated by 924C. I think the Hobbs Act cases, Hill and Melgar-Cabrera, as well as this Cortzantoveros decision indicate that the answer is yes. The damaging property does necessarily require 924C physical force. The Hill decision from the Second Circuit basically took the Supreme Court's Curtis Johnson test of whether there's injury or pain to someone and looked at what is that going to mean in the context of property and said, well, it's going to be force that's capable of causing injury to property. Damaging property and injuring property are the same thing. Those words are synonyms. And following the logic of Cortzantoveros, you can't damage something without using force that's capable of damaging it. But, again, I appreciate your knowledge of all these recent cases. But they are recent cases. And we have to look again at what would have been the effect of the law at the time that this conviction occurred. We wouldn't have ontoveros. We wouldn't have the cases you've just cited. So we have to look then, was there error? Was there damage to property that was force? Was there damage to person and injury to person that involved force? So I think looking back at that time, you would have the Peres-Vargas analysis at that point. But the question is, in some sense, this goes to the question of whether he's actually innocent or not, because he's not going to be actually innocent if, in fact, now with the new law, we find that, in fact, that it does categorically satisfy. Your actually innocent approach, this sort of throws out that first issue of whether or not we should first look at error before we proceed to harmlessness. I think the two are interrelated here, because whether he's going to be actually innocent or not, he'd have to be innocent both under the residual clause and innocent under the force clause. But applying what law at what time? Sure. And so the two, again, are interrelated, because the law that gives them the benefit has changed, but so has the law that at the time would have harmed them has changed. And so for the actual innocence, the government's position would be you'd have to be actually innocent the entire time. The entire time, not just now? Well, if you're going to overcome the timeliness, if he's – I'm not sure how he could necessarily be actually innocent. You wouldn't have the timeliness concern even at that time, because we wouldn't even have a 2255 motion at the time. Well, no, that's not the point. Take us through chronologically, looking first at error. Sure. Is there error? And look at Perez-Vargas and argue that. So under Perez-Vargas, I think that you would apply the categorical approach, and I think that they have a valid argument that you have these – the statute here says injuring people, injuring a person. And you have the Perez-Vargas examples that say that that's not necessarily going to – that's not going to qualify as force. And so then you have Castleman and Ontiveros changing what requires an actual force. So at that time, if you're just going under Perez-Vargas, they wouldn't have met the force clause, but they would have – They being the government. Yes. We wouldn't have satisfied the force clause, but we would have satisfied the residual clause, which was legitimate at the time. So there wouldn't have been any error at the time because the residual clause would have made him guilty at that particular time. But you would concede that it's more likely than not he was sentenced under the residual clause. I would concede that because of Perez-Vargas, yes. And if that's the case, doesn't he prevail here because we have Salas that says that provision is unconstitutional? It – the problem would be that it would be – it would end up being a harmless error because the question isn't just is the residual clause invalid. It's is he actually innocent under 924C such that the timeliness can be overcome and he isn't actually innocent because he's still – given the state of the law, he's still guilty under the first – under the force clause. So he's not actually innocent. But you don't – I mean, you don't need to go to actual innocence if they can show that the error – the use of the residual clause wasn't harmless. Right? I mean, you don't even go to actual innocence if when you look at it, you can see that the only option was the residual clause. Then, as Judge Briscoe says, he wins. So I think procedurally the way is you get to his 2255. Is it timely? It's plainly not timely. The only way he can overcome that timeliness is to show that he's actually innocent. But now he's not actually innocent because the force clause means that his prior crime, his predicted crime, is in fact a crime of violence. And you're talking about physical? Yes. Physical. Well, that – because he can't meet the elements clause as well, he doesn't have the actual innocence required to overcome the timeliness bar. Let's talk about that. Now, if we move forward and we look at what would be the applicable law at time of sentencing, then we're faced with Mathis, aren't we? And when you – and that statute, the – whatever it is, the abuse of the witness, what's the word? Retaliation. There you go. Retaliation. It is divisible. And there are parts of that that would not support a crime of violence conviction. I'm not sure which parts of the statute wouldn't. To property. Property. No, we believe the property does satisfy it. That's – our position is that the property does satisfy it. Because 924C has force against the property of another. And you can't damage property without using force against the property of another that's capable of damage. Spray painting. The spray painting example that – when we're talking about damaging property, one, the Hill court said that injures property. It said that that, in fact, qualifies as damaging property, injuring property. And if the test for force against property is injuring property, then spray painting certainly qualifies. But the language of the two is coextensive. If you think that you can, in fact, not damage property without using force capable of it, then anything that's going to qualify for 924 – qualify for the witness retaliation statute on the property is going to meet 924C's property clause. In that circumstance, if spray painting is damaging property, then it injured the property. Ergo, it required force capable of doing it, and it meets it. If spray painting doesn't damage property, you couldn't be – you couldn't be prosecuted under witness retaliation statute. And there you're getting into Castleman and Miguel Cabrera, right? Correct. And I think it makes sense because when we're thinking about force against property, which wasn't actually in Curtis Johnson because it was an ACCA case, and ACCA doesn't have this property clause that 924C does. But when we're talking about force against property, that's concerned with – the victim, again, is the owner of that property. And so it's anything that's going to diminish the value of property. Property doesn't have feelings. So we can't ask if it's in pain. We have to look analogously at has it been injured. And spray painting the property would, in fact, injure the property. So anything other than a technical trespass would be injury to property? I would think that anything that damages it would be. I think injury and damage are the same thing. And I think Melgar Cabrera supports that as well and may even require that holding. The Melgar case is the one where this Court decided that Hobbs Act robbery necessarily is – categorically meets this – meets 924C's force. And Hobbs Act robbery includes injury to property. Same thing here, damaging property. And while this Court only talked about the property provision a bit in a footnote of that provision, when you're dealing with the categorical approach, you're necessarily saying that every case, every situation that would fall under that is going to meet this clause. And so you've said that injury to property necessarily meets 924C here. There's no difference between damaging property and, therefore, the witness retaliation statute would have to meet that. I also think that even if you didn't want to go to the property provision of 924C, if you look at the elements of witness retaliation, if you look at the fact that it's damaging someone's property and you're doing it because they're testifying or because they're giving information in a proceeding, that that's also inherently a threat against the person themselves. Look at what I did to your property. Now look at what I'm going to do to you. And so I don't think we even necessarily have to meet the property provision because we can get there through the threat of force to a person. Unless the Court has other questions. And that's included in the statute. Threat of force to person is included in the retaliation phrase that describes damage to property. Threat of force to person is in 924C, right? So threatened use of physical force against a person is in 924C. Okay. I thought you were putting it into. Yeah, no. And then so if you took damaging property of somebody because they're testifying or the like, inherently you're threatening the person themselves as well. You're not simply threatening their – So in summary, you would argue, I'm guessing, that Mr. Bowen does not prevail. Correct, because – And he does not prevail not because it's untimely, but as you go forward in time and apply today's law, he cannot prevail. In some sense they're both related because part of the reason it's – he would also lose because it's untimely because he has to show actual innocence and he can't show actual innocence because you meet the elements clause of 924C, even if the residual clause is no longer valid. Unless there are further questions. We're either satisfied or overwhelmed.  Satisfied or confused. Thank you. We would ask you to affirm. I'd just like to briefly address the Hobbs Act robbery cases. So I think it's important to note that the cases the government relies on, the case from this court, Malgar Cabrera and Hill, both deal with Hobbs Act robbery, which is a totally different statute. And going back as far as Taylor, we know that you can't look at the specific statutory language to determine whether a crime is a crime of violence. The classic example is robbery. A lot of the robberies in the country are crimes of violence, violent felonies. A lot of them are not, even if they have the same identical statutory language. And so the key issue here is that there is a case that Mr. Bowen can point to, that's Edwards from the Sixth Circuit, where spray painting a car has been used to trigger the witness retaliation statute. And then there was another case cited in our briefs, which was Landeros-Gonzalez from the Fifth Circuit, which is an old case. But it says that the act of spray painting a car, a criminal mischief type act, would not even be a crime of violence under the residual clause. So in other words, back then, the Fifth Circuit said something like criminal mischief was so minor that it wouldn't even qualify as a crime of violence under the residual clause. And I think that's the key point here, which is that under the government's reading, they would sweep in types of crimes like vandalism, criminal mischief. Well, that was before U.S. v. Johnson, where they defined force capable of causing physical pain or injury. Correct. And you're talking about Curtis Johnson. Yes. And I think that Curtis Johnson also provides some key language here, which is stepping back from the specifics of the categorical approach and looking at the backdrop of what Congress was thinking when it passed this law. Curtis Johnson says that you can't that you can't include crimes. Sorry that the Congress was thinking that you can't include crimes that are, quote, comical misfit with the defined term of violent felony. And I think the point that Mr. Bowen makes in his brief is that including crimes such as vandalism, criminal mischief, that sort of thing into the definition of violent felony would be a common comical misfit with that term. I can see why he would say that, but I'm not sure I agree. OK. I would ask this court vacate the 924 C conviction and remand for resentencing. Thank you. Thank you. Thank you both for your arguments this morning. Case is submitted. Our next case for argument is United States versus Lopez.